**In the Matter of Denotra COTTON, Debtor.**

**Bankruptcy No. 96–80150.**

United States Bankruptcy Court, D. Nebraska.

Aug. 22, 1996.

Julie Frank, Scott Lautenbaugh, Omaha, NE, for debtor.

Kathleen Laughlin, Trustee, Omaha, NE.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on May 28, 1996, on the Amended Plan filed by the debtor. Appearances: Julie Frank for the debtor and Scott Lautenbaugh for Federal Diversified. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

### Background

On March 19, 1996, the debtor filed an amended Chapter 13 plan (filing # 13) and Federal Diversified, aka The Pacesetter Corporation (Pacesetter), filed an objection to confirmation of the plan on May 3, 1996. (Filing # 34). The plan proposed to pay the debt in full at the contract rate of interest. However, the debt would not be paid in full under the plan until October 1998, while the last payment under the contract was, according to the debtor, due in July 1997. Pacesetter objects to the plan on the basis that the plan modifies its claim, the debtor's principal residence is the sole security for its debt and the debtor is prevented from modifying that debt pursuant to 11 U.S.C. § 1322(b)(2).

Pacesetter's claim is based on an installment sales contract executed by the debtor on March 30, 1992. The contract provided that Pacesetter would custom build and install two storm doors and two "prime quick fit" doors. In return, the debtor granted Pacesetter a security interest in "1. the goods, services and property being purchased, and 2. my real estate and improvements, including my house, all at my 'Address' designated above." (Pacesetter proof of claim). According to the debtor, though not mentioned by Pacesetter in its proof of claim, Pacesetter reduced the contract to judgment in the Douglas County Court and had garnished the debtor's wages for a seven month period prior to the filing of the petition in this case. (Debtor's statement of financial affairs).

## Decision

Pacesetter is not entitled to the protection afforded to certain secured creditors pursuant to 11 U.S.C. § 1322(b)(2), and its claim may be modified under the debtor's plan. Therefore, its objection to confirmation of the debtor's plan is overruled.

## Discussion

Pacesetter maintains that its claim may not be modified in a chapter 13 plan pursuant to section 1322(b)(2) of the plan. That section provides that a plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2). Pacesetter, in its objection, asserted that the debt was solely secured by the debtor's principal residence. However, that is not necessarily an accurate statement. The debt was also secured by the doors that Pacesetter manufactured and installed. The issue to be determined therefore is whether the additional collateral prevents the operation of the anti-modification provision of section 1322(b)(2).

There is a split of authority among the courts as to the exact meaning of the phrase "only by a security interest in real property that is the debtor's principal residence." The Eighth Circuit has not addressed the issue, but the Third Circuit, in *Hammond v. Commonwealth Mortgage Corp.* (*In re Hammond*), 27 F.3d 52 (3d Cir.1994), held that a claimant's rights under a purchase money mortgage secured by the debtor's home *and* "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises" could be modified pursuant to a chapter 13 plan. *Id.* at 54. The court reasoned that a mortgagee who has an additional security interest in any of the debtor's property in addition to the principal residence is not entitled to the anti-modification provision in section 1322(b)(2). See also, *In re Guilbert*, 176 B.R. 302 (D.R.I. 1995); 5 LAWRENCE P. KING, ET AL., COLLIER

ON BANKRUPTCY ¶ 1322.06[1][a], at 1322–21 to 1322–23 (15th ed. 1996).

In contrast, The Sixth Circuit, in *Allied Credit Corp. v. Davis* (*In re Davis*), 989 F.2d 208 (6th Cir.1993), has held that a mortgagee's rights could not be modified if the debt was secured by not only the principal residence, but also "the Hereditaments and Appurtenances, rents, royalties, profits, and fixtures thereto appertaining ..." *Id.* at 209–10. The court stated that the additional interest "refers to benefits which are merely incidental to an interest in real property, and [the mortgagee's] interest in these incidental benefits does not constitute additional security for purposes of § 1322(b)(2)." *Id.* at 212. See also, *In re Spano*, 161 B.R. 880 (Bankr. D.Conn.1993); *In re French*, 174 B.R. 1 (Bankr.D.Mass.1994).

There are two reasons why it would be permissible for the debtor in the instant case to modify Pacesetter's rights, even if the position of the Sixth Circuit was adopted. First, Pacesetter's interest in the goods it has manufactured and installed is not merely incidental to an interest in the debtor's real property. The contract provides for a purchase money security interest in the goods before they were installed, and thus the goods were personalty and independent of the real estate. Pacesetter is a vendor of personal property which might be annexed to real estate, and through the security agreement in the contract was seeking to protect the priority of its security interest against a real estate lienor. See, *Spano*, 161 B.R. at 889.

However, Pacesetter's rights could still be modified assuming that the goods were fixtures. In *In re Reeves*, 65 B.R. 898 (N.D.Ill. 1986), a creditor held a claim that represented the balance owed on a retail installment contract executed by the debtor. Under the contract, certain improvements were made to the debtor's home. The creditor was granted a security interest pursuant to the contract "in the above-described goods and all accessories, parts and other property now or hereafter at any time owned by Buyer and installed therein or affixed thereto (herein collectively called the "Goods") and all proceeds thereof; and ... all present and future

obligations of Buyer under this contract shall be secured by a Trust Deed (Mortgage) on the real property located at the Job Address ..." *Id.* at 900 n. 5. The trust deed mortgage gave the creditor an interest in the debtor's real property "together with all improvements, tenements, easements, fixtures and appurtenances ..." *Id.* at 901.

The creditor maintained that the language of the contract granted it a security interest in fixtures, and that because the fixtures become part of the real estate, it had a security interest only in the debtor's real property. The court held that even assuming that the retail installment agreement created a security interest in fixtures, the creditor's rights could be modified.

> ... Article 9 of the Uniform Commercial Code recognizes the personal property status retained by fixtures by establishing priorities for security interests in fixtures under Article 9 and conflicting security interests arising under real estate mortgages. U.C.C. § 9–313. Under certain circumstances the Article 9 security interest prevails and the creditor may remove the fixtures from the real estate. U.C.C. § 9–313(8).
>
> The court reads the installment contract as creating two different security interests: one attaching only to fixtures under Article 9, and the other attaching to "real property that is the debtor's principal residence," including fixtures, under the trust deed mortgage and real estate law. While the latter security interest falls within the § 1322(b)(2) exception, the former does not. By creating both, [the creditor] loses the benefit of the § 1322(b)(2) exception.

*Id.* at 901. The court construed the language in the contract to demonstrate an intent to obtain a security interest in goods, which would retain their character as personal property notwithstanding attachment to the real estate. *Spano,* 161 B.R. at 888.

Second, Pacesetter is not part of the class of creditors that Congress intended to protect by enacting section 1322(b)(2). As stated by the Ninth Circuit:

> Congress inserted the "secured only by a security interest" language because it intended to limit the ban on modification to lenders "engaged only in providing long-term home mortgage financing[, not] lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts." *United Companies Fin. Corp. v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D.Fla.1980); see *In re Banks* 31 B.R. 173, 174 n. 1 (Bankr. N.D.Ala.1982); *In re DuPree,* 6 B.R. 476, 477 (Bankr.S.D.Ohio 1980). Creditors who happened to take a security interest in the debtor's home along with a security interest in other property of the debtor were meant to be excluded from the extra protection of subsection b(2)'s ban on modification; their rights could be modified by a Chapter 13 plan. See Note, Saving the Family Homestead: Home Mortgages Under Chapter 13, 43 Ohio St.L.J. 905, 918–19 (1982).

*Seidel v. Larson (In re Seidel),* 752 F.2d 1382 (9th Cir.1984). See also, *Grubbs v. Houston First. Am. Sav. Ass'n,* 730 F.2d 236, 246 (5th Cir.1984) (in banc) ("This [section] was apparently in response to perceptions ... that, home-mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification ..."); *In re Reeves,* 65 B.R. 898, 899 (N.D.Ill.1986) ("Congress apparently intended the § 1322(b)(2) exception to protect institutional lenders engaged in home mortgage financing."); *In re Lyons,* 46 B.R. 604, 606 (Bankr.N.D.Ill.1985) ("A loan for the purpose of home improvement is not the long term mortgage financing which Congress sought to protect in enacting section 1322(b)(2).").

As Pacesetter's debt is not secured only by the debtor's principal residence, the additional collateral apart from the debtor's residence is not merely incidental thereto, and Pacesetter is not a part of the class of creditors that Congress intended to protect with the anti-modification provision of section 1322(b)(2), its claim is subject to modification by the debtor. Accordingly, its objection to confirmation of the debtor's proposed plan is overruled.

Separate journal entry to be filed.